**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

FILED
U.S. District Court
District of Kansas
09/18/2026
Clerk, U.S. District Court
By: JAL Deputy Clerk

**JUSTIN JADE COLLINS,**

**Plaintiff,**

**v.** **CASE NO. 26-3131-JWL**

**BILLY TOMASI, et al.,**

**Defendants.**

**MEMORANDUM AND ORDER**
**TO SHOW CAUSE**

Plaintiff Justin Jade Collins is hereby required to show good cause, in writing, to the undersigned, why this action should not be dismissed due to the deficiencies in Plaintiff's Amended Complaint that are discussed herein. Plaintiff is also given the opportunity to file a second amended complaint to cure the deficiencies. Plaintiff's Motion to Accept Grievances and Exhaustion of Prison Litigation Reform Act Paperwork from Original Complaint (Doc. 11) is granted, as discussed below.

## I. Nature of the Matter before the Court

Plaintiff is a state pretrial detainee being held at the Crawford County Jail ("CCJ") in Girard, Kansas. He proceeds *pro se* and *in forma pauperis*. Plaintiff filed a Complaint (Doc. 1) in this matter, then filed three motions to supplement. The Court ordered Plaintiff to file an amended complaint, which he did on August 5, 2026 ("AC") (Doc. 10). The AC is therefore the operative complaint.

In the AC, Plaintiff asserts claims related to his state prosecution and related to the conditions of his confinement at the CCJ. Plaintiff was arrested on March 29, 2026, and taken to the CCJ. He states that he was arrested on two warrants and ran from the officers. (Doc. 10, at 1, 6.) First, he alleges that he was not "booked-in" but instead placed in "24/7 isolation for Pre-Trial Punishment" for eight days by Sheriff Tomasi. *Id*. at 1, 6.

Next, Plaintiff states that at the time of arrest, he reported having a broken finger. *Id*. at 6. He claims that Lt. Westhoff lied about his injury, saying an x-ray showed the finger was fine. *Id.* at 6, 7. This resulted in pain until the finger was surgically corrected on July 9, 2026, and his finger being permanently disfigured. *Id*. She also allegedly attempted to cancel his surgery, kicked him, and told his wife another woman was writing to him. *Id*.

On the third day in isolation at the CCJ, Plaintiff was taken to court for a "formal charging." *Id*. at 8. Bond was set at $500,000. *Id.*

Plaintiff alleges that Sheriff Tomasi interrogated him on the fourth day without counsel present and without being Mirandized. *Id.*

Plaintiff was taken back to court on the fifth day for a "formal charging" of a new charge derived from Tomasi's questioning of Plaintiff the day before. *Id.* His bond was revoked. *Id*. Plaintiff asserts he was not given a chance to bond out when he had a bond. *Id*.

Plaintiff alleges that Judge Gordon violated "bond laws," and the prosecutor filed a motion claiming Plaintiff had signed away his in-person hearing rights when he had not. *Id.*

Plaintiff also mentions two incidents occurring at the CCJ in 2021. In the first, a corrections officer attacked him, and in the second, another officer lied in an affidavit saying Plaintiff had initiated the attack. *Id.*

Plaintiff names the following defendants: Sheriff Billy Tomasi; Lt. Charlotte Westhoff; Lt. Jason Vanbecelaere; Corrections Officer Gabe Emery; Assistant District Attorney Christina Lloyd; Kristy Caddell; and Judge Gregory Gordon. He seeks $50 million in punitive damages; $10 million in compensatory damages; an injunction and restraining order against Defendant Tomasi (purpose and scope undefined); and immediate release. (Doc. 10, at 16.)

## II. Statutory Screening of Prisoner Complaints

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1)–(2).

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins,* 487 U.S. 42, 48 (1988) (citations omitted); *Northington v. Jackson*, 973 F.2d 1518, 1523 (10th Cir. 1992). A court liberally construes a pro se complaint and applies "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). In addition, the court accepts all well-pleaded allegations in the complaint as true. *Anderson v. Blake*, 469 F.3d 910, 913 (10th Cir. 2006). On the other hand, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," dismissal is appropriate. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

A pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (citations omitted). The complaint's "factual allegations must be enough to raise a right to relief above the speculative level" and "to state a claim to relief that is plausible on its face." *Id.* at 555, 570.

The Tenth Circuit Court of Appeals has explained "that, to state a claim in federal court, a complaint must explain what each defendant did to [the *pro se* plaintiff]; when the defendant did it; how the defendant's action harmed [the plaintiff]; and, what specific legal right the plaintiff believes the defendant violated." *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007). The court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citation omitted).

The Tenth Circuit has pointed out that the Supreme Court's decisions in *Twombly* and *Erickson* gave rise to a new standard of review for § 1915(e)(2)(B)(ii) dismissals. *See Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007) (citations omitted); *see also Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009). As a result, courts "look to the specific allegations in the complaint to determine whether they plausibly support a legal claim for relief." *Kay*, 500 F.3d at 1218 (citation omitted). Under this new standard, "a plaintiff must 'nudge his claims across the line from conceivable to plausible.'" *Smith*, 561 F.3d at 1098 (citation omitted). "Plausible" in this context does not mean "likely to be true," but rather refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it

innocent," then the plaintiff has not "nudged [his] claims across the line from conceivable to plausible." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Twombly*, 127 S. Ct. at 1974).

**III. DISCUSSION**

After reviewing Plaintiff's Amended Complaint, the Court finds that it is subject to dismissal for the following reasons.

**A. Habeas Nature of Claim and Abstention**

Plaintiff seeks to have his state criminal cases dismissed and to be released from custody. "[A] § 1983 action is a proper remedy for a state prisoner who is making a constitutional challenge to the conditions of his prison life, *but not to the fact or length of his custody*." *Preiser v. Rodriguez,* 411 U.S. 475, 499 (1973) (emphasis added). When the legality of a confinement is challenged so that the remedy would be release or a speedier release, the case must be filed as a habeas corpus proceeding rather than under 42 U.S.C. § 1983, and the plaintiff must comply with the exhaustion of state court remedies requirement. *Heck v. Humphrey*, 512 U.S. 477, 482 (1994); *see also Montez v. McKinna,* 208 F.3d 862, 866 (10th Cir. 2000) (exhaustion of state court remedies is required by prisoner seeking habeas corpus relief); *see* 28 U.S.C. § 2254(b)(1)(A) (requiring exhaustion of available state court remedies). "Before a federal court may grant habeas relief to a state prisoner, the prisoner must exhaust his remedies in state court. In other words, the state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition." *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999); *see Woodford v. Ngo*, 548 U.S. 81, 92 (2006); *Rose v. Lundy*, 455 U.S. 509, 518–19 (1982).

"The *Younger* doctrine requires a federal court to abstain from hearing a case where . . . (1) state judicial proceedings are ongoing; (2) [that] implicate an important state interest; and (3) the

state proceedings offer an adequate opportunity to litigate federal constitutional issues." *Buck v. Myers*, 244 F. App'x 193, 197 (10th Cir. 2007) (unpublished) (citing *Winnebago Tribe of Neb. v. Stovall*, 341 F.3d 1202, 1204 (10th Cir. 2003); *see also Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982)). "Once these three conditions are met, Younger abstention is non-discretionary and, absent extraordinary circumstances, a district court is required to abstain." *Buck*, 244 F. App'x at 197 (citing *Crown Point I, LLC v. Intermountain Rural Elec. Ass'n*, 319 F.3d 1211, 1215 (10th Cir. 2003)).

An online Kansas District Court Records Search shows that Plaintiff's state court criminal cases are ongoing. *See State v. Collins*, Case No. CRG-2026-CR-000062 (District Court of Crawford-Girard County, Kansas); *State v. Collins*, Case No. CRG-2026-CR-000063 (District Court of Crawford-Girard County, Kansas); *State v. Collins*, Case No. CRG-2026-CR-000064 (District Court of Crawford-Girard County, Kansas). On September 8, 2026, the state court entered an order in all three cases committing Plaintiff to the CCJ until his next hearing, set for September 22, 2026. *Id.*

Therefore, it appears that the first and second conditions for *Younger* abstention would be met because Kansas undoubtedly has an important interest in enforcing its criminal laws through criminal proceedings in the state's courts. *In re Troff*, 488 F.3d 1237, 1240 (10th Cir. 2007) ("[S]tate control over criminal justice [is] a lynchpin in the unique balance of interests" described as "Our Federalism.") (citing *Younger*, 401 U.S. at 44). Likewise, the third condition would be met because Kansas courts provide Plaintiff with an adequate forum to litigate his constitutional claims by way of pretrial proceedings, trial, and direct appeal after conviction and sentence, as well as post-conviction remedies. *See Capps v. Sullivan*, 13 F.3d 350, 354 n.2 (10th Cir. 1993) ("[F]ederal courts should abstain from the exercise of . . . jurisdiction if the issues raised . . . may

be resolved either by trial on the merits in the state court or by other [available] state procedures.") (quotation omitted); *see Robb v. Connolly*, 111 U.S. 624, 637 (1984) (state courts have obligation 'to guard, enforce, and protect every right granted or secured by the constitution of the United States . . . .'"); *Steffel v. Thompson*, 415 U.S. 452, 460–61 (1974) (pendant state proceeding, in all but unusual cases, would provide federal plaintiff with necessary vehicle for vindicating constitutional rights).

"[T]he *Younger* doctrine extends to federal claims for monetary relief when a judgment for the plaintiff would have preclusive effects on a pending state-court proceeding." *D.L. v. Unified Sch. Dist. No. 497*, 392 F.3d 1223, 1228 (10th Cir. 2004); *see also Garza v. Burnett*, 672 F.3d 1217, 1220 (10th Cir. 2012) (citing *Wallace v. Kato*, 549 U.S. 384, 393 (2007)); *Myers v. Garff*, 876 F.2d 79, 81 (10th Cir. 1989) (directing district court to stay claim for damages).

Plaintiff is ordered to show good cause why his claims here that are related to his state prosecution should not be dismissed or stayed based on *Younger* abstention. The failure to respond by the deadline may result in dismissal of this matter without prejudice and without further notice.

**B. *Heck* Bar**

Plaintiff also seeks money damages in this case. As set forth above, Plaintiff's state criminal proceedings are ongoing. However, if he is convicted, any request for money damages may be barred by *Heck*. *See Heck*, 512 U.S. at 482. Before a plaintiff may proceed in a federal civil action for monetary damages based upon an invalid conviction or sentence, he must show that his conviction or sentence has been overturned, reversed, or otherwise called into question. *Id*. If a judgment on Plaintiff's claim in this case would necessarily imply the invalidity of his conviction, the claim may be barred by *Heck*. In *Heck v. Humphrey*, the United States Supreme Court held that when a state prisoner seeks damages in a § 1983 action, the district court must

consider the following:

> whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.

*Id*. at 487. In *Heck*, the Supreme Court held that a § 1983 damages claim that necessarily implicates the validity of the plaintiff's conviction or sentence is not cognizable unless and until the conviction or sentence is overturned, either on appeal, in a collateral proceeding, or by executive order. *Id.* at 486–87.

**C. Immune and Improper Defendants**

Plaintiff names a state district court judge as a defendant to this action. A state judge is absolutely immune from § 1983 liability except when the judge acts "in the clear absence of all jurisdiction." *Stump v. Sparkman*, 435 U.S. 349, 356–57 (1978) (articulating broad immunity rule that a "judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority . . . ."); *Hunt v. Bennett*, 17 F.3d 1263, 1266 (10th Cir. 1994). Only actions taken outside a judge's judicial capacity will deprive the judge of judicial immunity. *Stump*, 435 U.S. at 356–57. Plaintiff alleges no facts whatsoever to suggest that the defendant judge acted outside of his judicial capacity. Defendant Gordon is therefore subject to dismissal.

Plaintiff also names a state prosecutor as a defendant. Prosecutors enjoy absolute immunity from liability for damages for activities "intimately associated with the judicial phase of the criminal process." *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976). "As *Imbler* and its progeny establish, absolute prosecutorial immunity is intended to protect the judicial process, not the prosecutor." *Chilcoat v. San Juan Cty.*, 41 F.4th 1196, 1208 (10th Cir. 2022) (citations omitted). "Since *Imbler*, the Supreme Court has prescribed, and we have followed, a 'functional approach'

to absolute prosecutorial immunity." *Id.* at 1208–09 (citing *Bledsoe v. Vanderbilt*, 934 F.3d 1112, 1117 (10th Cir. 2019) (quoting *Burns v. Reed*, 500 U.S. 478 (1991)); *see also Briscoe v. LaHue*, 460 U.S. 325, 342 (1983) ("[O]ur cases clearly indicate that immunity analysis rests on functional categories, not on the status of the defendant.")). "Under the functional approach, we 'look to which role the prosecutor is performing' at the time of the challenged conduct, *Mink*, 482 F.3d at 1262, and examine 'the nature of the function performed, not the identity of the actor who performed it,' *Forrester v. White*, 484 U.S. 219, 229, 108 S.Ct. 538, 98 L.Ed.2d 555 (1988)." *Id.* at 1209.

Courts determine whether a prosecutor is performing a function "intimately associated with the judicial phase of the criminal process," by applying a "'continuum-based approach' and the 'more distant a function is from the judicial process, the less likely absolute immunity will attach[.]'" *Id.* (citations omitted). The Tenth Circuit has held that:

> We begin with an obvious benchmark: a prosecutor is absolutely immune when functioning "within the scope of his duties in initiating and pursuing a criminal prosecution." *Imbler*, 424 U.S. at 410, 96 S.Ct. 984. By "initiating and presenting the government's case," the prosecutor is cast in "the role of an advocate." *Mink*, 482 F.3d at 1261. As we have summarized, "Prosecutors are entitled to absolute immunity for their decisions to prosecute, their investigatory or evidence-gathering actions, their evaluation of evidence, their determination of whether probable cause exists, and their determination of what information to show the court." *Nielander v. Bd. of Cnty. Comm'rs*, 582 F.3d 1155, 1164 (10th Cir. 2009).
>
> "The doctrine of absolute immunity, however, is not without limits." *Becker v. Kroll*, 494 F.3d 904, 925 (10th Cir. 2007). Absolute prosecutorial immunity is justified "only for actions that are connected with the prosecutor's role in judicial proceedings, not for every litigation-inducing conduct." *Burns*, 500 U.S. at 494, 111 S.Ct. 1934. We will not extend absolute immunity when a prosecutor functions "in the role of an administrator or investigative officer rather than that of advocate." *Mink*, 482 F.3d at 1259 (emphasis omitted) (quoting *Imbler*, 424 U.S. at 430-31, 96 S.Ct.

> 984). The public policy considerations that support the protection of prosecutorial functions are not applicable to investigative and administrative acts. *See Thomas v. Kaven*, 765 F.3d 1183, 1193 (10th Cir. 2014) ("Absolute immunity extends only so far as is necessary to protect the judicial process.").
>
> For example, when a prosecutor conducts investigative work normally performed by the police, they are not performing a prosecutorial function. *See Buckley v. Fitzsimmons*, 509 U.S. 259, 273-74, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993). "Although identifying those acts entitled to absolute immunity is not always easy, the determinative factor is 'advocacy' because that is the prosecutor's main function . . .." *Rex v. Teeples*, 753 F.2d 840, 843 (10th Cir. 1985); *see also Adams v. Hanson*, 656 F.3d 397, 403 (6th Cir. 2011) ("The analytical key to prosecutorial immunity, therefore, is *advocacy*—whether the actions in question are those of an advocate.") (citation omitted).

*Id*.

In this case, Plaintiff alleges that Defendant Lloyd made a misrepresentation to the state court during a hearing. *See id*. at 1209–10 (noting that the claims against the prosecutor were based on his courtroom conduct—statements made in court during the preliminary hearing). The prosecutor's statement was made in her role as advocate in court, and arguments made during a hearing "are quintessential advocacy." *Id*. at 1210. "[C]ourtroom advocacy is an activity 'intimately associated with the judicial phase of the criminal process.'" *Id*. (citations omitted).

The Tenth Circuit has held that the falsity of a prosecutor's statements during courtroom advocacy "cannot defeat absolute immunity." *Id*. In *Burns*, the "Supreme Court determined the prosecutor had functioned as an advocate at the probable-cause hearing and was absolutely immune because, at common law, 'prosecutors . . . were absolutely immune from damages liability . . . for making false or defamatory statements in judicial proceedings (at least so long as the statements were related to the proceeding).'" *Id.* (citing *Burns v. Reed*, 500 U.S. 478, 489–90

(1991)). Therefore, it appears that Defendant Lloyd enjoys absolute prosecutorial immunity for the statements made during Plaintiff's criminal proceedings.

Defendant Kristy Caddell is also subject to dismissal. Caddell was Plaintiff's court-appointed attorney. Plaintiff has not shown that his state court defense attorney was acting under color of state law as required under § 1983. *See Polk Cty. v. Dodson*, 454 U.S. 312, 318–19, 321–23 (1981) (assigned public defender is ordinarily not considered a state actor because their conduct as legal advocates is controlled by professional standards independent of the administrative direction of a supervisor); *see also Vermont v. Brillon*, 556 U.S. 81, 91 (2009); *Dunn v. Harper County*, 520 F. App'x 723, 725-26, 2013 WL 1363797 at *2 (10th Cir. Apr. 5, 2013) ("[I]t is well established that neither private attorneys nor public defenders act under color of state law for purposes of § 1983 when performing traditional functions as counsel to a criminal defendant." (citations omitted)). A criminal defense attorney does not act under color of state even when the representation was inadequate. *Briscoe*, 460 U.S. at 330 n.6. Plaintiff's claim against his defense attorney is subject to dismissal for failure to state a claim.

**D. Statute of Limitations**

Plaintiff's claims based on incidents which occurred at the CCJ in 2021 are subject to dismissal because they are untimely. The statute of limitations applicable to § 1983 actions is determined from looking at the appropriate state statute of limitations and tolling principles. *See Hardin v. Straub*, 490 U.S. 536, 539 (1989). "The forum state's statute of limitations for personal injury actions governs civil rights claims under both 42 U.S.C. § 1981 and § 1983. . . . In Kansas, that is the two-year statute of limitations in Kan. Stat. Ann. § 60–513(a)." *Brown v. Unified Sch. Dist. 501, Topeka Pub. Sch.*, 465 F.3d 1184, 1188 (10th Cir. 2006) (citations omitted).

While state law governs the length of the limitations period and tolling issues, "the accrual

date of a § 1983 cause of action is a question of federal law." *Wallace v. Kato*, 549 U.S. 384, 388 (2007). Under federal law, the claim accrues "when the plaintiff has a complete and present cause of action." *Id.* (internal quotation marks and citation omitted). In other words, "[a] § 1983 action accrues when facts that would support a cause of action are or should be apparent." *Fogle v. Pierson*, 435 F.3d 1252, 1258 (10th Cir. 2006) (internal quotation marks and citation omitted), *cert. denied* 549 U.S. 1059 (2006). Based on Plaintiff's allegations, his causes of action accrued when the incidents occurred in 2021.

A district court may dismiss a complaint filed by an indigent plaintiff if it is patently clear from the allegations as tendered that the action is barred by the statute of limitations. *Id*. at 1258–59; *see also Jones v. Bock*, 549 U.S. 199, 214 (2007); *Hawkins v. Lemons*, No. 09-3116-SAC, 2009 WL 2475130, at *2 (D. Kan. Aug. 12, 2009). "While the statute of limitations is an affirmative defense, when the dates given in the complaint make clear that the right sued upon has been extinguished, the plaintiff has the burden of establishing a factual basis for tolling the statute." *Cash v. City of Durant*, 2024 WL 1573947, at *3 (10th Cir. 2024) (unpublished) (citing *Aldrich v. McCulloch Props., Inc.*, 627 F.2d 1036, 1041 n.4 (10th Cir. 1980)).

State law also governs tolling issues for § 1983 actions. *See Hardin v. Straub*, 490 U.S. 536, 539 (1989); *Roberts v. Barreras*, 109 F. App'x 224, n.1 (10th Cir. 2004) (citation omitted). Kansas recognizes the doctrine of equitable tolling. *Matter of Bell*, 529 P.3d 153, 157 (Kan. 2023). The Kansas Supreme Court ("KSC") explained in *Bell* that "[u]nder certain circumstances, 'equitable estoppel can be applied to bar a party from relying on the defense of the statute of limitations.'" *Bell*, 539 P.3d at 157 (quoting *Rockers v. Kansas Turnpike Authority*, 991 P.2d 889 (1999). The burden is on the party claiming application of equitable estoppel. *Id*. That party must show that another party induced it to believe certain facts existed, by action or silence; it rightfully

relied and acted on such belief; and it would be prejudiced if the other party were allowed to deny the existence of such facts. *Id.* The KSC also noted that equitable tolling under federal law requires a plaintiff to show "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Id.* (quoting *Holland v. Florida*, 560 U.S. 631, 645-46 (2010)). The KSC then applied both tests to the question of whether equitable tolling applied to toll the statute of limitations in a state wrongful conviction action. *Id.* at 154.

Plaintiff has not shown that Defendants affirmatively induced him into delaying his filing of this civil rights action or that despite pursuing his rights diligently, some "extraordinary circumstances" prevented the timely filing. *Dartez v. Peters*, Case No. 15-3255-EFM-DJW, 2018 WL 1138282, at *6 (D. Kan. March 2, 2018) (citation omitted). Extraordinary circumstances that could warrant equitable tolling include "when the defendant's conduct rises to the level of active deception; where a plaintiff has been lulled into inaction by a defendant, and likewise, if a plaintiff is actively misled or has in some extraordinary way been prevented from asserting his or her rights." *Farhat v. United States*, No. CIV-19-401-SPS, 2020 WL 5751618, at *4 (E.D. Okla. Sept. 25, 2020) (quoting *Impact Energy Res., LLC v. Salazar*, 693 F.3d 1239, 1246 (10th Cir. 2012); *United States v. Clymore*, 245 F.3d 1195, 1199 (10th Cir. 2001)).

It plainly appears from the face of the Complaint that Plaintiff's claims based on incidents at the CCJ occurring in 2021 are subject to dismissal as barred by the applicable two-year statute of limitations. Plaintiff filed his action on May 20, 2026. It thus appears that any events or acts of the defendants taken in connection with the 2021 incidents at the CCJ took place more than two years prior to the filing of Plaintiff's Complaint and are time-barred. *See Fratus v. Deland*, 49 F.3d 673, 674–75 (10th Cir. 1995) (district court may consider affirmative defenses *sua sponte*

when the defense is obvious from the face of the complaint and no further factual record is required to be developed).

**E. Claim for Unconstitutional Punishment**

"[T]he Fourteenth Amendment 'prohibits *any* punishment' of a pretrial detainee without due process." *Hubbard v. Nestor*, 830 F. App'x 574, 583 (10th Cir. 2020) (unpublished) (citing *Blackmon v. Sutton*, 734 F.3d 1237, 1241 (10th Cir. 2013); *see also Bell v. Wolfish*, 441 U.S. 520, 535 – 37 (1979) (holding that the government may subject a pretrial detainee to restrictions and conditions of confinement without triggering procedural due process protection so long as such measures don't amount to punishment). "[A] showing of an expressed intent to punish on the part of detention facility officials"—standing alone—is sufficient to demonstrate "the disability is imposed for the purpose of punishment." *Id.* (citing *see Bell*, 441 U.S. at 538; *see also Blackmon*, 734 F.3d at 1241).

"Restraints that are reasonably related to the institution's interest in maintaining jail security do not, without more, constitute unconstitutional punishment, even if they are discomforting and are restrictions that the detainee would not have experienced had he been released while awaiting trial." *Bell*, 441 U.S. at 540. "[I]n addition to ensuring the detainees' presence at trial, the effective management of the detention facility once the individual is confined is a valid objective that may justify imposition of conditions and restrictions of pretrial detention and dispel any inference that such restrictions are intended as punishment." *Id.* The Supreme Court has warned that these decisions "are peculiarly within the province and professional expertise of corrections officials, and, in the absence of substantial evidence in the record to indicate that the officials have exaggerated their response to these considerations, courts should ordinarily defer to their expert judgment in such matters." *Id.* at 540, n.23 (citations omitted).

Plaintiff states in the AC that he was placed in segregation for eight days after his arrest. He asserts this was done as punishment for fleeing from the arresting officers. However, Plaintiff's admitted noncompliance undermines the plausibility of his claim that his placement and retention in segregation was not reasonably related to the CCJ's interest in effective management and security of the facility.

Plaintiff mentions the Eighth Amendment in connection with his segregation claim. A prison official violates the Eighth Amendment when two requirements are met.[1] *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). "First, the deprivation alleged must be, objectively, 'sufficiently serious.'" *Id*. To satisfy the objective component, a prisoner must allege facts showing he or she is "incarcerated under conditions posing a substantial risk of serious harm." *Id.*; *Martinez v. Garden*, 430 F.3d 1302, 1304 (10th Cir. 2005).

The Eighth Amendment requires prison and jail officials to provide humane conditions of confinement guided by "contemporary standards of decency." *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). The Supreme Court has acknowledged that the Constitution "'does not mandate comfortable prisons,' and only those deprivations denying 'the minimal civilized measure of life's necessities' are sufficiently grave to form the basis of an Eighth Amendment violation." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991) (internal citations omitted). Indeed, prison conditions may be "restrictive and even harsh." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). "Under the Eighth Amendment, (prison) officials must provide humane conditions of confinement by ensuring inmates receive the basic necessities of adequate food, clothing, shelter, and medical care and by

[1] The Tenth Circuit has held that a pretrial detainee's claims regarding conditions of confinement are governed by the Due Process Clause, and that "the Eighth Amendment standard provides the benchmark for such claims." *Routt v. Howard*, 764 F. App'x 762, 770 (10th Cir. 2019) (unpublished) (quoting *Craig v. Eberly*, 164 F.3d 490, 495 (10th Cir. 1998)); *see also Hooks v. Atoki*, 983 F.3d 1193, 1203–04 10th Cir. 2020) (declining to extend *Kingsley's* exclusively objective standard for pretrial detainees' excessive force claims to Fourteenth Amendment deliberate indifference claims).

taking reasonable measures to guarantee the inmates' safety." *McBride v. Deer*, 240 F.3d 1287, 1291 (10th Cir. 2001) (citation omitted).

The second requirement for an Eighth Amendment violation "follows from the principle that 'only the unnecessary and wanton infliction of pain implicates the Eighth Amendment.'" *Farmer*, 511 U.S. at 834. Prison officials must have a "sufficiently culpable state of mind," and in prison-conditions cases that state of mind is "deliberate indifference" to inmate health or safety. *Id*. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. at 837. "The Eighth Amendment does not outlaw cruel and unusual 'conditions'; it outlaws cruel and unusual 'punishments.'" *Id*. It is not enough to establish that the official should have known of the risk of harm. *Id*.

Because the sufficiency of a conditions-of-confinement claim depends upon "the particular facts of each situation; the 'circumstances, nature, and duration' of the challenged conditions must be carefully considered." *Despain v. Uphoff*, 264 F.3d 965, 974 (10th Cir. 2001) (quoting *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000)). "While no single factor controls . . . the length of exposure to the conditions is often of prime importance." *Id*. As the severity of the conditions to which an inmate is exposed increases, the length of exposure required to make out a constitutional violation decreases. Accordingly, "minor deprivations suffered for short periods would not rise to an Eighth Amendment violation, while 'substantial deprivations. . .' may meet the standard despite a shorter duration." *Id*. (citations omitted).

Plaintiff's allegation that he was in segregation for eight days does not demonstrate a "sufficiently serious" deprivation or facts showing he is "incarcerated under conditions posing a substantial risk of serious harm." Plaintiff should show good cause why this claim should not be

dismissed.

**F. Claim related to Miranda Warning**

Plaintiff alleges that Sheriff Tomasi interviewed him on the third day of his detention and failed to give him a Miranda warning. This allegation does not state an actionable § 1983 claim. "[T]he law in this circuit is clear that the only remedy available for a *Miranda* violation is the suppression of any incriminating evidence." *Haulman v. Jefferson Cty. Sheriff Office,* 15 F. App'x 720, 721 (10th Cir. 2001) (citing *Bennett v. Passic,* 545 F.2d 1260, 1263 (10th Cir.1976)). The question of whether evidence obtained by Tomasi in the interview should be suppressed must be raised in Plaintiff's state criminal proceedings.

**G. Claim for Inadequate Medical Care**

The United States Supreme Court has held that an inmate advancing a claim of cruel and unusual punishment based on inadequate provision of medical care must establish "deliberate indifference to serious medical needs." *Estelle*, 429 U.S. at 106; *Boyett v. County of Washington*, 282 F. App'x 667, 672 (10th Cir. 2008) (citing *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005)). The "deliberate indifference" standard has two components: "an objective component requiring that the pain or deprivation be sufficiently serious; and a subjective component requiring that [prison] officials act with a sufficiently culpable state of mind." *Miller v. Glanz*, 948 F.2d 1562, 1569 (10th Cir. 1991); *Martinez v. Garden*, 430 F.3d 1302, 1304 (10th Cir. 2005). In the objective analysis, the inmate must show the presence of a "serious medical need," that is "a serious illness or injury." *Estelle*, 429 U.S. at 104, 105; *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A serious medical need includes "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Ramos v. Lamm*, 639 F.2d 559, 575 (10th Cir. 1980); *Hunt v. Uphoff*, 199 F.3d 1220,

1224 (10th Cir. 1999); *Martinez*, 430 F.3d at 1304 (quoting *Farmer*, 511 U.S. at 834 (quotation omitted)).

"The subjective component is met if a prison official knows of and disregards an excessive risk to inmate health or safety." *Martinez*, 430 F.3d at 1304 (citing *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000) (quotation omitted)). In measuring a prison official's state of mind, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 1305 (citing *Riddle v. Mondragon*, 83 F.3d 1197, 1204 (10th Cir. 1996) (quotation omitted)).

Plaintiff alleges that he had a broken finger when he arrived at the CCJ on March 29, 2026. (Doc. 10, at 2.) He claims that the finger was x-rayed in "early April," and the x-ray confirmed the finger was broken. Id. He further claims that Defendant Westhoff lied about the results and told him his finger was fine. Id. Then, in July, 2026, Plaintiff was seen by an orthopedic surgeon who ordered surgery. Id. The surgery occurred on July 9, 2026, and the finger was repaired. Id.

Delay in providing medical care does not violate the Eighth Amendment, unless there has been deliberate indifference resulting in substantial harm. *Olson v. Stotts*, 9 F.3d 1475 (10th Cir. 1993). In situations where treatment was delayed rather than denied altogether, the Tenth Circuit requires a showing that the inmate suffered "substantial harm" as a result of the delay. *Sealock v. Colorado*, 218 F.3d 1205, 1210 (10th Cir. 2000) (citation omitted). "The substantial harm requirement 'may be satisfied by lifelong handicap, permanent loss, or considerable pain.'" *Mata*, 427 F.3d at 751 (quoting *Garrett v. Stratman*, 254 F.3d 946, 950 (10th Cir. 2001)).

To state a claim, Plaintiff needs to clarify his factual allegations, particularly as to whether he experienced substantial harm from the delay in treatment of his finger.

**IV. Motion**

Also before the Court is a "Motion to Accept Grievances & Exhaustion of PLRA Paperwork from Original Complaint" (Doc. 11). Plaintiff asks to have the exhibits from his original complaint considered with his AC. The motion is granted. Plaintiff does not have to refile the exhibits.

**V. Response and/or Amended Complaint Required**

Plaintiff is required to show good cause why his Complaint should not be dismissed for the reasons stated herein. Plaintiff is also given the opportunity to file a complete and proper second amended complaint upon court-approved forms that cures all the deficiencies discussed herein.

To add claims, significant factual allegations, or change defendants, a plaintiff must submit a complete amended complaint. *See* Fed. R. Civ. P. 15. An amended complaint is not simply an addendum to the original complaint, and instead completely supersedes it. Therefore, any claims or allegations not included in the amended complaint are no longer before the Court. It follows that a plaintiff may not simply refer to an earlier pleading, and the amended complaint must contain all allegations and claims that a plaintiff intends to pursue in the action, including those to be retained from the original complaint. Plaintiff must write the number of this case (26-3131-JWL) at the top of the first page of his amended complaint, and he must name every defendant in the caption of the amended complaint. *See* Fed. R. Civ. P. 10(a). Plaintiff should also refer to each defendant again in the body of the amended complaint, where he must allege facts describing the unconstitutional acts taken by each defendant including dates, locations, and circumstances. Plaintiff must allege sufficient additional facts to show a federal constitutional violation.

The amended complaint should concisely (1) raise only properly joined claims and defendants; (2) allege sufficient facts to state a claim for a federal constitutional violation and show

a cause of action in federal court; and (3) allege sufficient facts to show personal participation by each named defendant.

If Plaintiff does not file a second amended complaint within the prescribed time that cures all the deficiencies discussed herein, this matter will be decided based upon the current deficient Amended Complaint and may be dismissed without further notice for failure to state a claim.

**IT IS THEREFORE ORDERED THAT** Plaintiff is granted until **October 19, 2026,** in which to show good cause, in writing, why Plaintiff's Amended Complaint should not be dismissed for the reasons stated herein.

**IT IS FURTHER ORDERED THAT** Plaintiff is granted until **October 19, 2026,** in which to file a complete and proper second amended complaint to cure all the deficiencies discussed herein.

**IT IS FURTHER ORDERED THAT** Plaintiff's Motion to Accept Grievances & Exhaustion of PLRA Paperwork from Original Complaint (Doc. 11) is **granted**.

The Clerk is directed to send § 1983 forms and instructions to Plaintiff.

**IT IS SO ORDERED**.

**Dated September 18, 2026, in Kansas City, Kansas.**

**S/ John W. Lungstrum**
**JOHN W. LUNGSTRUM**
**UNITED STATES DISTRICT JUDGE**